All right, we are going to go on to yet another interesting case, No. 143313, Montana v. Cross. Good morning still, Mr. Hanna. Good morning, Judge Roman. May it please the Court, The Government has expressly conceded that Rosemont applies retroactively on collateral review, and that under Rosemont, the jury instructions in Mr. Montana's criminal trial were erroneous. In fact, the Government also does not dispute that Mr. Montana's petition falls squarely within the Savings Clause of 2255. The entire opposition in the Government's brief rests on two arguments that this Court should reject. The first of these goes to the sufficiency of the evidence, which of course Mr. Montana hasn't challenged. The second goes to procedural default, and I'll take them in that order, unless the Court has any questions. I had a factual question. I'm wondering if Mr. Montana concedes, as a factual matter, that when Dodd returned to the car after robbing the bank, he knew that Dodd had a gun at that point. Your Honor, Mr. Montana does not concede that. The record shows that the officers who, when they apprehended Mr. Montana and Mr. Dodd, located the gun in the rear back of the car, the rear seat underneath the driver's seat, beneath the jacket where the loot procured from the bank robbery was. The only evidence in the record to suggest that Mr. Montana ever even saw the gun was Dodd's own testimony that when he returned to the vehicle, he put the gun, the loot, and his jacket in the middle armrest as he was removing the first layer of clothes to change into his second. If the jury convicted Montana for the robbery because he drove the getaway car, then he would seem to have been on notice of Dodd's possession of the gun before he completed his acts of assistance, wouldn't it? Well, Your Honor, I think that cuts to it. If the act of assistance is driving away and he had a chance to refuse to participate in the case, why wouldn't that be enough? Well, Your Honor, I think this cuts to one of the crucial points in Rosemont itself, which is that the intent must extend to the very full scope of the crime. The full scope of the crime here is an armed robbery. And it could be argued that Mr. Montana, and he was convicted of aiding and abetting a bank robbery, but for there to be intent that goes all the way to an armed robbery, there needs to be some evidence of foreknowledge that a gun would be used in that robbery. And on this record and on any record that the government could create, there is no evidence that it's foreknowledge that a gun would be used. You know, Montana asked for an evidentiary hearing in the district court. Is that the factual dispute that you believe would require an evidentiary hearing at this stage of the proceedings? Your Honor, I believe, I mean, Mr. Montana, after he filed his pro se petition, we became involved on these facts. And applying Rosemont, Mr. Montana is entitled to have his conviction under 924C vacated entirely with further instructions for the district court to either retry him on the 924C charge or conduct an evidentiary hearing to determine his actual innocence. And that's something that goes to the procedural fault dispute. But, you know, there is no, the only evidence that could have sustained Mr. Montana's conviction or the only evidence that supports that he had advanced knowledge is Dodd's testimony that Mr. Montana supposedly knew he had a gun on him some of the times. Of course, that also means that some of the times he didn't have a gun on him. And that's some of the evidence that the government points to in its brief is Dodd's testimony and Dodd's proffer statements. The proffer statements, of course, are hearsay. They are not an evidence. They were actually used mainly to impeach and discredit Dodd's testimony and led to the assistant in a criminal trial to argue that Dodd was a liar. So after disavowing Dodd's testimony at the criminal trial, the government is now in its opposition invoking it as evidence sufficient that a reasonable juror, a jury could have reasonably concluded that even under Rosemont, Mr. Montana is guilty. But Dodd's testimony is very clear to the extent it can be credited. It's overwhelmingly favorable for Mr. Montana. In fact, this court ruled in an earlier connection with Mr. Montana's direct appeal that it was because of Dodd's testimony that the jury probably, or probably because of Dodd's testimony, the jury acquitted him of the conspiracy charge. The only other evidence that the government has pointed to in its opposition is the point that Your Honor just made a moment ago that Mr. Montana could have jumped out of the car, could have exited the car. I believe the government says he could have exited the car when he saw Dodd return the gun, or he could have renounced all involvement. If Dodd did what? If, I'm sorry, Montana could have exited the vehicle when Dodd returned with a gun in hand, or he could have, or Montana could have renounced all involvement in the crime at that point. So are you saying that the gun was in Dodd's hand when he returned to the car?  He was running or walking quickly across the parking lot to the car, and the government's point is that at that exact moment Montana had the option to walk away. Now this is the government's best argument, but it's also an argument that falls well short of the standard in Rosemont because the Supreme Court took up this very argument. The government made this very argument on cert for the Supreme Court in Rosemont, and the Supreme Court rejected it. And they rejected it because in the Supreme Court's words, when the gun appears at the scene, it could already be too late at that point for the foreknowledge to be formed. Because first, the acts of assistance may have been completed, and if there was no high-speed chase, the government would have argued that the acts of assistance had been completed by virtue of Mr. Montana having driven Dodd to the bank, having sat in the parking lot. Or alternatively, it may be too late to realistically or reasonably walk away from the crime. And that's exactly what happened here. Mr. Montana's intent was at best, on this record, to participate in a bank robbery, not an armed bank robbery. And then practically speaking, if Montana did see the gun at that moment, it actually would have increased or could have increased the risk to Montana, to bystanders, to police, if he ran away from the vehicle, if he renounced his involvement in the crime to Dodd. And that might have actually increased the likelihood of firearm usage. Mr. Hanna, I wonder if we could move on to the procedural default issue. Of course, Your Honor. Some of our cases do take the position that if the defendant had an opportunity to address the issue in his direct appeal or his first habeas, we really ought not allow him to do so again in the 2241. Now, the situation here, of course, is that the Rosemont case came down after that. But certainly, the legal landscape prior to Rosemont, at least in this circuit, did indicate that an argument along these lines could be made. Why shouldn't we look at those cases? I know there's a huge issue of waiver here. The government hasn't relied on that tack at all. But I'd like to get your views, certainly, on the matter. Yes, as Your Honor points out, there is an issue of waiver. The government hasn't raised that argument. But to the argument itself, Mr. Montana had brought a previous 2255 petition. And it wasn't until Rosemont that it was clear that this was definitively the law of every circuit in this country. And that's when he realized that he might have had a claim here. This ties very closely with, obviously, the standards set forth in Davenport and also the good cause standard for procedural default. And to the extent that Mr. Montana has procedurally defaulted, there is good cause for having not raised this claim at the trial court. And good cause for not having raised it until after 2014, when Rosemont was decided. I'm sorry. Could you also talk to the actual innocence exception? Absolutely, Your Honor. With the court's permission, I'll briefly address the cause and then move on to actual innocence. Sure. In 1998, when Mr. Montana was tried, the jury instructions were correct. They followed the pattern. They were correct. That's why they weren't objected to. The law of the circuit was squarely against any type of Rosemont claim. And, in fact, the district court judge, after the criminal trial and post-trial motions, said that Mr. Montana's conviction on count three was impregnable to attack in view of the jury instruction and in view of the fact that Dodd knowingly used a gun. There is good cause here because now those jury instructions are wrong. And, essentially, the cause that Mr. Montana has is this couldn't have been brought before. And if he had to have brought it before, that is a position that would invite a kitchen sink approach from every advocate who is before a criminal trial judge to raise every, as this court has said, every fanciful argument that could be raised. Now, we had the Woods case and the Taylor case. That's correct, Your Honor. And why didn't they signal that we were willing to entertain this issue? Well, Your Honor, the Woods case basically allowed constructive knowledge. And I see I'm nearing the end of my time, so I'll reserve the rest of rebuttal unless it's a preference. I'd like to get an answer to this. Yeah. Yes. Why don't you answer? The Woods case was squarely against Mr. Montana's claim because it allowed for constructive knowledge to suffice to convict someone on aiding and abetting liability for 924C. Thank you. Will you add, please, three minutes to Mr. Kelbley's argument? Because I'm going to add three minutes to Mr. Hanna's. Thank you. May it please the Court, my name is Shane Kelbley. I represent the United States. Your Honors. Could I start you right out? You have so little time. Yes, Your Honor. Does the government concede that Section 2241 is the appropriate way for Montana to bring his challenge at this point? I know that the government, of course, takes the position that the petition should be denied. But does the government concede that 2241 rather than 2255 is the correct vehicle for the challenge? No, Your Honor, because the government argues that appellant has procedurally defaulted and is barred from raising any challenge at this point. So there's no proper way? Yes, Your Honor, that's correct.  Yes, Your Honor. Because appellant didn't raise this issue at trial and because appellant didn't raise this issue on him. Where did you make that argument in your brief? On page 16, Your Honor, Section D is titled, Appellant did not object at trial or renew his objection on direct appeal to the standard for aiding and abetting a Section 924C violation. Therefore, he has procedurally defaulted his claim. The last section of our brief, Your Honor, deals with procedural default. And that's what I'd like to start with because I think it's the most important issue in this case. As I said, appellant has procedurally defaulted. And as a result, his claim can only be raised on collateral attack if he can satisfy two very, very narrow exceptions. Showing that he had cause for the default and showing that the error he asserts caused him actual prejudice or showing actual innocence. And it is the government's submission that he can show neither of those things. That he can meet neither of these very heavy burdens. As to cause and actual prejudice, the Supreme Court has explained that the existence of cause for procedural default must ordinarily come from some external factor. And appellant points to no Supreme Court cases, indeed no Seventh Circuit cases, that would have squarely foreclosed such a claim as that made in Roseman. In fact, one of the cases that appellant cites, Boosley, is extremely apt on this point. In Boosley, a habeas petitioner pleaded guilty to using a firearm based on the fact that he stored his firearms close to his drugs. Subsequently, Bailey was decided wherein the definition of using a firearm was narrowed by the Supreme Court. In Boosley, the appellant made the same arguments made here. The case was decided after my case. But the Supreme Court said no. That's not sufficient cause. And to use the Supreme Court's language in Boosley, futility cannot constitute cause if it means simply that a claim was, quote, unacceptable to that particular court at the particular time. And as this court has pointed out, there was ample precedent on the record suggesting that such a claim was possible. So how do I factor Inouye Davenport into your arguments? Your Honor, my memory of Davenport is that it mostly deals with the savings clause. Here, what I'm arguing is procedural default, right? I think Davenport laid out very eloquently the factors for when you can get in through the savings clause. But what I'm saying is that we can't get to that analysis because there's been a procedural default and it's not excused. You argue procedural default in the district court? Did you argue procedural default in the district court? Your Honor, I believe this case was dismissed on preliminary review and the government did not have a chance to enter a brief. That would explain that, Your Honor. As to actual, oh, I'm sorry. Yeah. Go ahead, Your Honor. What is the best admissible evidence that Montana knew in advance that Dodd had a gun? Are you relying on Dodd's pretrial proffer statements? Because they are not admissible. That's true. Those are not evidence. And I think that I would concede that I think that's error. However, I would say this. Appellant's co-conspirator in this crime, or the person who accompanied him on this crime, presented wide-ranging and sometimes contradictory evidence. He couldn't be controlled. He was considered a loose cannon. That's how he was described by the district court. And this court, in reviewing the case on direct appeal, said it's true that he gave some exonerating evidence, but he also provided inculpatory evidence. And I'll give you a cite and a quote real quick. His co-conspirator said, Mr. Montana knew from me telling him that I had been shot and damn near killed, excuse the expression, that I do carry a gun. That's on Supplemental 104. And when asked the question, you told Mr. Montana that you carried a gun, didn't you? He answered, some of the times, yes. Is this the strongest possible evidence that could ever be presented? No. But it is evidence. But it is. No, it's not. But it is evidence. It is evidence, Your Honor. And moreover, even accepting, even if we accepted Mr. Montana's story that he was in the car and someone got in with a gun and money and said, drive away with the police, even accepting his version of events, at that point he did, as the district court pointed out in their denial of his habeas, he had the chance to get out of the car to renounce involvement in this crime. Boy, talk about a Hobson's choice. Yeah. What a choice. As to actual innocence, Your Honor, we would argue that appellant, actual prejudice, I'm sorry, Your Honor, appellant cannot establish that he was actually prejudiced by this jury instruction. Because I think we need to remember that we are in a procedural default mode where all the inferences are drawn in favor of the government. And it's a very demanding standard. Actual prejudice requires more than the mere possibility of prejudice. It requires a showing that the error worked to defendant's actual and substantial disadvantage. And that's why we cited the Supreme Court's decision in United States v. Frady, where a habeas petitioner complained about a jury instruction that was later disapproved of, just as Mr. Montana does here. The Supreme Court made clear that what was required to show actual prejudice for a defendant who has failed to object to a jury instruction at trial, just as Mr. Montana has here, was this. The degree of prejudice must be so great as to show that the instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned. And based on this high standard, our contention is that appellant cannot meet the requirements for actual prejudice. As for actual innocence- Does the jury instruction error meet the standard for harmless error? You know, I couldn't speculate on that, Your Honor, because I've only approached this from the concept of procedural default utilizing the standards outlined by the Supreme Court for this procedural posture. I can't say whether a court on direct review under plain error review would find harmless error. I can't say that with any sort of certainty, Your Honor. Just to quickly touch on actual innocence, just as appellant is unable to show cause and prejudice, he's also unable to show actual innocence. And this is, again, I think where we go back into the record a little bit. And where we have to remember also, I'm sorry, the standard of review here. A petitioner's burden at this gateway innocence stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt. That's House v. Bell, United States Supreme Court, in 2006. Actual innocence means factual innocence, not mere legal insufficiency. And as for appellant's reliance on Boosley, which did remand a case for a district court determination or a hearing about actual innocence, that case involved a plea deal where there was no evidence presented at all in the Rule 11 colloquy or in the stipulation of facts as to whether Boosley satisfied the new elements of the law. Here we have a jury trial where evidence was presented, thin as appellant might contend, that he had advanced knowledge of the gun. And I can tell you that a reasonable jury could have convicted him of foreknowledge in at least two ways. And here's the one way is they could have believed that part of his conspirator's testimony where he said, yes, he knew I had a gun. And disbelieved the other part where he said, he didn't know I had a gun. Because that witness was highly unreliable and a jury is allowed to take what they want from witness testimony. So they could have believed that all along Mr. Montana knew about the bank robbery and knew that a gun was going to be used. Or they could have credited part of Mr. Montana's sort of story and said, you know, he didn't know about the bank robbery until the bank robber got into his car with a gun and money and said, let's get out of here. And at that point, instead of getting out of the car, instead of telling his friend, what are you doing? He engaged in a high speed police pursuit that ended in a crash. And I think a reasonable jury could conclude that under either of those scenarios, he had foreknowledge. Your Honor, this is not a case about an innocent man languishing in prison for a crime he did not commit. This is about a bank robber who was convicted 17 years ago and has had a trial and appeal and several collateral attacks. If there are no further questions, the government would rest on its briefs. Thank you very much. Thank you, Your Honor. Thank you. Okay. Three minutes, Mr. Thank you for the additional time, Your Honor. First off, Mr. Montana was acquitted of the conspiracy charge. There was no credible evidence that he was planning this heist with Mr. Dodd. Second off, the gun that Mr. Dodd said he carried some of the times, again, there's a reasonable inference that he didn't carry the gun some of the times as well. To the points counsel made, there are Supreme Court cases that would find cause here, and those are Reed v. Ross and Murray v. Carrier, which hold that a very novel claim or a claim that didn't have a legal or factual basis at the time it could have been raised is good cause. Bowsley can be distinguished on the ground that in that case the Supreme Court granted cert to resolve a circuit split on 924C convictions that were obtained pursuant to guilty pleas. And some of this court's sister circuits have distinguished Bowsley on that grounds, on those grounds, and found good cause on cases in fact similar to this one. And I would point out the Sixth Circuit and the Third Circuit have done so. Your Honor made the point about Davenport earlier. I think it's important to note that there's a tension between Davenport and the inadequate and ineffective standard set forth in Davenport, and the good cause standard is articulated by the government. It's strange that it could be inadequate or ineffective to bring the claim under 2255, or it could allow you to bring the claim under 2241, but after allowing the 2241 petition to go forward, then, well, on the same facts and for the same reason, you lack good cause. So there's a tension there. And frankly, there's a tension even looking at the rules of professional conduct. Attorneys aren't supposed to bring arguments or make claims that they know are against settled law. So the good cause exists here under Reed v. Ross, Murray v. Carrier, and again, Bowsley could be distinguished because of the posture in that case, and that's what other sister circuits have done. With respect to the prejudice to Mr. Montana, the prejudice here is that Mr. Montana would be unable to bring a claim that he could have brought. The jury instructions at the time Mr. Montana was tried were correct. They followed the pattern. I believe most district court judges would be surprised to have a litany of objections to the pattern jury instructions at a time when they are presumed to be valid and follow the circuit law, only to preserve something that may happen 10, 15, 20 years down the line. With respect to the harmless error, it's very clear that the error here wasn't harmless. And the government's argument that a reasonable jury could have X, could have Y, that's not the appropriate standard. The jury instruction here was erroneous, and Mr. Montana is entitled to relief unless the error was harmless. The error here was substantial and injurious to Mr. Montana because it allowed this jury to convict him simply because, and the jury instruction itself is telling, Mr. Montana was guilty of the charge of bank robbery, and the jury concluded that Dodd knowingly used or carried a handgun during the bank robbery. That instruction is even more deficient than the instruction the Supreme Court reviewed in Rosemont, which at least required the accomplice to knowingly and actively participate in the crime with the knowledge that his cohort used the firearm. So in sum, Mr. Montana has shown good cause and prejudice resulting from his claim not being heard. With respect to actual innocence, which I'll go through briefly, Mr. Montana is actually innocent. This record is, I'm sorry, Your Honor, do you have a question? This record is not just thin on Mr. Montana's knowledge ahead of time, it is threadbare at best. The fact that Mr. Montana may have known a gun was in Mr. Dodd's pocket some of the times. I some of the times carry a pen, doesn't mean I carry a pen all the times. So I believe Mr. Montana, at a very, at a bare minimum, like the petitioner in Bowsley, would be entitled to a hearing, an evidentiary hearing, to determine whether he could bring the actual innocence claim. Thank you. Thank you. We are so grateful, Mr. Levenstam, Mr. Brody, and Mr. Hanna, for the remarkable job you always do when you walk into this court. Thank you for taking on these responsibilities. And thank you as well, of course, to the government. Without whom, who would we pay our taxes to? All right. The case will be taken under advisement. Thank you very much.